UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THADDEUS WILLIAMS, 438010,

       Petitioner,

-vs-                      No.   2:13-CV-14636
                                   Hon. David Lawson

CINDI CURTIN,

       Respondent.

_____/

**REPLY BRIEF**

**Introduction**

The principle (but not exclusive) point of this brief is to respond to the Attorney General's attempt to default the Petitioner's entire habeas corpus because the state court converted a non-6.500 petition into a 6.500 motion without notice and then procedurally defaulted the Defendant for not complying with rules never announced after the Court changed the "game." When Petitioner ultimately did file a 6.500 motion, the Michigan Court of Appeals did not treat the case as involving a successive petition, but the Michigan Supreme Court did. The Attorney General therefore claims that

the time for the actual 6.500 motion does not toll the one year for filing the petition.  They also claim that all the issues raised in that challenge may not be considered by this Court.

This position flies in the face of the concession officially proffered to the United States Court of Appeals for the Sixth Circuit by then Solicitor General Eric Restuccia acting in his official capacity in *Ruelas v Wolfenbarger*, 580 F3d 403 (6th Cir 2009).  This Court must hold the Attorney General to its position, and hold that the Attorney General has knowingly waived this objection.  This not only means that the Petition is timely, but also that the isssues VI-XIII were not reached by the merits by the Michigan Supreme Court and should be subject to de novo review.

## Counter-Statement of the Standard of Review

A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are *materially* indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.' " *Mitchell v. Esparza,* 540 U.S. 12, 15–16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam) (*quoting Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).   AEDPA requires this Court to follow "*fundamental principles* established by [its] most relevant precedents." *Abdul-Kabir v. Quarterman,* 550 U.S. 233, 258, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007) (emphasis added). *See also Murdoch v. Castro*, 609 F.3d 983, 1003 (9th Cir. 2010)

Not every argument of counsel distinguishing a controlling case qualified as "meaningful" or "fundamental."  *Christian v. Frank*, 595 F.3d 1076, 1081, n.7 (9th Cir. 2010) . *See also Pannetti v. Quarterman* , 551 US 930, 953 (2007).  AEDPA does not "require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied."

3

*Carey v. Musladin*, 549 U.S. 70, 81, 127 S. Ct. 649, 656, 166 L. Ed. 2d 482

(2006) (Kennedy, J., concurring in judgment).

Any skilled lawyer can always find a distinguishing fact between two

cases. *Cf Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S.

573, 583, 130 S. Ct. 1605, 1612, 176 L. Ed. 2d 519 (2010) (In a non-AEDPA

case, the majority called the dissent's distinctions with prior holdings

"distinctions without differences"). As the Ninth Circuit has noted:

> The dissent misconstrues the nature of our inquiry
> under AEDPA. Bradley need not produce a
> "spotted calf" on the precise issue at hand to
> warrant habeas relief. *See Van Tran,* 212 F.3d at
> 1154 & n. 16 ("AEDPA does not require an on-
> point Supreme Court case for us to reverse...."
> Rather, it is sufficient that the due process
> violation involved here offends the principles
> previously enunciated by Supreme Court
> precedent and reaffirmed by our case law. *See id.;
> see also Taylor v. Withrow,* 288 F.3d 846, 852 (6th
> Cir.2002) ( "The [Supreme] Court has made clear
> that its relevant precedents include not only bright-
> line rules but also the legal principles and standards
> flowing from precedent.") (citing *Williams v.
> Taylor,* 529 U.S. 362, 407, 120 S.Ct. 1495, 146
> L.Ed.2d 389 (2000)).

*Bradley v. Duncan*, 315 F.3d 1091, 1101 (9th Cir. 2002). *Murdoch v. Castro*,

609 F.3d 983, 1003 (9th Cir. 2010). The Sixth Circuit has expressly

recognized this principle. *Blackston v Rapeleje*, ___ F3d (6th Cir. No. 12-2668;

Oct. 7, 2014). In rejecting the Michigan Attorney General's argument to the contrary, the Court stated: "'AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied' . . . . The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner."

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (*quoting Williams,* 529 U.S. at 413, 120 S.Ct. 1495). *Wiggins,* 539 U.S. at 520–21, 123 S.Ct. 2527 (citations omitted);

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. ––––, 131 S.Ct. 770, 789, 178 L.Ed.2d 624 (2011), (*quoting Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly

established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412, 120 S.Ct. 1495. Section 2254(d) "does not require citation of [Supreme Court] cases— indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin,* 503 F.3d 488, 493 (6th Cir.2007), citing *Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir.2003); *Dickens v. Jones,* 203 F.Supp.2d 354, 359 (E.D.Mich.2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir. 1998).

Lastly, construction of the AEDPA and the rest of the habeas corpus statute is subject to de novo review. *Walker v Norris*, 436 F3d 1026, 1029 (CA 8 2006).

## Timing

The Warden offers the novel view that Mr. Williams should have been able to file only one tolling state post-conviction and that successive petitions should therefore not toll the timing for filing a petition beyond the life of the first petition (and any appeals) from the same.  Petitioner argues that as long as the petitions were timely filed and the pleading requirements meet the standards under Michigan Court rules, the petition is timely filed.

A.     *Properly filed.*

A habeas corpus petitioner has one year from the completion of his direct appeal (including the time period for filing for a writ of certioari) to file his/her petition.  The time period is tolled for any properly filed petition.  Properly filed means timely filed and filed in compliance with the local court rules.  It does not mean meritorious and the issues presented in the petition (or successive petition) does not require the Petitioner to present the issues in the tolling document to the federal court.  *See Lovasz v Vaughn*, 134 F3d 146, 149 (3d Cir 1998) ("Further, we reject the notion that a meritless PCRA petition cannot constitute "a properly filed application" under § 2244(d)(2)").  *Lovasz* involved a successive state petition.  The Third

Circuit found that it continued to toll the one year time period (reversing the lower court).

The controlling statute provides:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

toward any period of limitation under this
subsection.

28 USCA 2244 (West)

The attorney general states that a successive petition which does not

meet the standards for a successive petition under Michigan's statute does

not qualify as properly filed.  Petitioner disagrees.

The United States Supreme Court has adopted a narrower definition

of the phrase "properly filed" than urged by the Attorney General.  The

Court has said that a petition can be properly filed even if *every claim in the*

*petition is procedurally* barred.  In so holding, the high court stated:

> An application is "filed," as that term is commonly
> understood, when it is delivered to, and accepted
> by, the appropriate court officer for placement into
> the official record. See, *e.g., United States v.*
> *Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed.
> 897 (1916) ("A paper is filed when it is delivered to
> the proper official and by him received and filed");
> Black's Law Dictionary 642 (7th ed.1999) (defining
> "file" as "[t]o deliver a legal document to the
> court clerk or record custodian for placement into
> the official record"). And an application is
> "*properly* filed" when its delivery and acceptance
> are in compliance with the applicable laws and
> rules governing filings. These usually prescribe, for
> example, the form of the document, the time limits
> upon its delivery,[2] the court and office in which it
> must be lodged, and the requisite filing fee. See,
> *e.g., Habteselassie v. Novak,* 209 F.3d 1208, 1210–

9

> 1211 (C.A.10 2000); 199 F.3d, at 121 (case below); *Villegas v. Johnson,* 184 F.3d 467, 469–470 (C.A.5 1999); *Lovasz v. Vaughn,* 134 F.3d 146, 148 (C.A.3 1998). In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, cf. *Martin v. District of Columbia Court of Appeals,* 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) *(per curiam),* or on all filers generally, cf. 28 U.S.C. § 2253(c) (1994 ed., Supp. IV) (conditioning the taking of an appeal on the issuance of a "certificate of appealability"). But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar.

*Artuz v Bennett*, 531 US 4, 8-9; 121 S Ct 361, 363-64; 148 L Ed 2d 213 (2000).

See also Minix v. Woods, 2014 U.S. Dist. LEXIS 102630, 4-8 (W.D. Mich. Apr. 17, 2014) (adopting the *Artuz* test); *Glenn v. Bowlen*, 2011 US App LEXIS 3926 at **5**-6 (6th Cir. 2001) (*Artuz* required reversal of district court opinion finding the petition was not 'properly' filed because it was barred under state procedural rules).   As the Fifth Circuit noted:

> The respondent's argument misconstrues the relevant precedent. Whether the state circuit court had jurisdiction to consider the claim raised by Cressionnie in his state habeas application is irrelevant to the issue of whether the application was properly filed; the relevant question was whether the state circuit court had jurisdiction to consider the application itself, regardless of whether it lacked jurisdiction to consider the

claims contained therein. *See Artuz v. Bennett,* 531
U.S. 4, 8-11, 121 S.Ct. 361, 148 L.Ed.2d 213
(2000); *Larry v. Dretke,* 361 F.3d 890, 893 (5th
Cir.2004). The state circuit court had jurisdiction
to consider Cressionnie′s state habeas application.
*See* Miss.Code Ann. § 11-43-7; *Bubac v. Boston,* 600
So.2d 951, 953 (Miss.1992). Accordingly,
Cressionnie′s state habeas application was properly
filed and tolled the statute of limitations pursuant
to 28 U.S.C. § 2244(d)(2), making his 28 U.S.C. §
2254 application timely. *See Artuz,* 531 U.S. at 8-
11, 121 S.Ct. 361; *Larry,* 361 F.3d at 893.

*Cressionnie v Kelly*, 174 Fed Appx 246, 247 (CA 5 2006).  Here, there really

isn't any question that the petition was properly completed and delivered to

the clerk for filing.  This fact is evidenced by the fact that the clerk received

the document, filed it, and ultimately referred it to the judge.

Even where the petition is filed under the wrong court rule or statute,

it is still deemed "properly filed" if it meets the basic filing requirements

under a state court rule, is timely tendered to the court, and timely docketed

by the clerk.  *Thompson v* Secretary, 595 F3d 1233, 1236-39 (11th Cir. 2010)

(Florida petition was improperly framed as a state habeas corpus petitioner

rather than a Rule 3.850, but it was 'properly filed' for purposes of Sec.

2244(d).  The problem with the Attorney General's approach is that

reasonable minds can differ as to the question of whether the standards for a

successive petition have been met. Normally, a prisoner can file one and

"only one" post-conviction petition under MCR 6.501 *et seq.* Two

exceptions are articulated in the rule. First, a new petition can be filed when

new facts are discovered. Second, it can be filed when there is a change in

the law which is retroactive. There is no textual requirement that due

diligence be used to discover the new evidence and secondly, there is no

limitation that the retroactive change in the law needs to be declared by the

Michigan Supreme Court or the United States Supreme Court. A trial judge

may determine retroactivity of the new ruling in the first instance.

Again, Michigan law does not bar a successive petition. A petitioner

can file such a petition when he/she believes that there is new law or new

facts which warrant reopening the case. The rule and its exceptions are

contained in MCR 6.502 (G) which provides:.

> **(G) Successive Motions.**
>
> (1) Except as provided in subrule (G)(2),
> regardless of whether a defendant has previously
> filed a motion for relief from judgment, after
> August 1, 1995, one and only one motion for relief
> from judgment may be filed with regard to a
> conviction. The court shall return without filing
> any successive motions for relief from judgment. A
> defendant may not appeal the denial or rejection of
> a successive motion.
>
> (2) A defendant may file a second or subsequent
> motion based on a retroactive change in law that

> occurred after the first motion for relief from
> judgment or a claim of new evidence that was not
> discovered before the first such motion. The clerk
> shall refer a successive motion that asserts that one
> of these exceptions is applicable to the judge to
> whom the case is assigned for a determination
> whether the motion is within one of the exceptions.

A petition which is returned under MCR 6.502(G)(1) cannot be appealed. There is no such limitation contained in Section 2 to the judge for review. Here, the Clerk did this and the trial judge issued a merit based analysis. The Court of Appeals denied leave to appeal relying on the absence of cause and prejudice.  It wasn't until this case reached the Supreme Court that the court disagreed. This Court should not now hold that this appellate disagreement converts a properly filed petition into an improperly filed one.

Should this matter be viewed a procedural defect, there is no showing that Michigan firmly and regularly followed the rule. A rule governing filings in state court must be firmly established and regularly followed before non-compliance with the rule will render a petition not properly filed for purposes of AEDPA's tolling provision.." *Van Zant v Florida Parole Com'n*, 308 Fed Appx 332, 335 (CA 11 2009).

The Michigan Court of Appeals denied leave to appeal in this matter for failure to meet the standards of MCR 6.508(D) which corresponds to Michigan's good cause and actual prejudice standard.  The Michigan Supreme Court conversely, thought that Mr. Williams did not meet the standard for a successive petition and relied on the prohibition contained in MCR 6.509.  Stated another way, there was a reasonable difference of opinion whether the successive petition standard was met or enforceable.

This case is clearly different from *Williams v Birkett*, 670 F3d 729, 731 (CA 6 2012) relied on by the trial court.  There, the clerk refused to docket the petition.  Under MCR 6.502(G)(1), that order could not have been appealed.  Here, the petition was filed, received, and considered.  Petitioner is prepared to show at an evidentiary hearing that if the clerk would have refused to file the Petition, he would have filed a stay and abate petition in this Court.  He did not because the case was docketed.

Similarly, there were summary dismissals based on improper filing in *Rodriguez v McQuidgen*, No. 08-CV-13263, 2009 WL 2742004 (ED Mich August 25, 2009) which could be the basis to limit the ruling, but the Petitioner submits the case is wrongly decided.  There, the Petitioner argued that the United States Supreme Court's ruling in Blakely v. Washington, 530

14

U.S. 296 (2004) was fully retroactive. While counsel believes that the argument for full retroactivity in 2009 was relatively weak, if *Blakely* was retroactive the Petitioner could have filed the Petition. With all due respect to Judge Steeh, the Court accidentally confused the merits of the argument with the properly filed requirement. Case law is clearly to the contrary.

Courts have held that the time involved in appealing a post-conviction denial is not counted in the one year time limit under Section 2244. Under, *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002), that a petitioner's claim is "pending" for the entire term of state court review, including those intervals between one state court's judgment and the filing of an appeal with a higher state court." Id. at 2138. *See also Mack v. Holt*, 62 Fed. Appx. 577, 578-579 (6th Cir. Mich. 2003).

B.   *Recharacterization*

A second problem is that this case involves a post-hoc recharacterization of the Petitioner's pleadings. As the Attorney General correctly notes, Mr. Williams's first motion was not a motion under MCR 6.501 *et seq*. It was a motion for relief under MCR 2.119.

While the state court's determination of state law is binding, it is important to stress that Mr. William's motion was not based on an unreasonable interpretation of Michigan law ,

The Court of Appeals believed that the Defendant could not use MCR 2.119, but there are clearly cases where MCR 2.119 has been used in a criminal case.

The Michigan Court of Appeals has said:

> While MCR 2.119 is a rule of civil procedure, it applies to criminal cases where, as here, no rule or statute provides to the contrary and the rule does not clearly apply only to civil actions.[1] This rehearing procedure allows a court to correct mistakes which would otherwise be subject to correction on appeal, though at much greater expense to the parties.

*People v Turner*, 181 Mich App 680, 682-83; 449 NW2d 680, 681 (1989).  Mr. Williams was on solid ground filing a motion under MCR 2.119 and not seeking to prematurely use his last method of review.

Similarly, Michigan Courts have held that the civil relief from judgment rules contained in MCR 2.612(C)(1) can sometimes be used in criminal cases.  In *People v. Cox,* 268 Mich. App. 440, 448, 709 N.W.2d 152 (2005), a panel of the Court of Appeals indicated that a defendant had failed

to preserve an issue for appeal by moving for a new trial in the lower court "or by moving for relief from judgment under MCR 2.612(C)(1)(b). In *People v. Wynn,* 197 Mich.App. 509, 511, 496 N.W.2d 799 (1992), the trial court dismissed criminal charges against a defendant, then reinstated the charges on the prosecution's motion. MCR 2.612 was referenced in that case as follows:

> Subrule (C)(1)(a) permits relief from judgment where there has been "mistake, inadvertence, surprise, or excusable neglect." Though the basis for relief in the present case is MCR 2.612(C)(1)(c), as opposed to MCR 2.16(C)(1)(a) or (b) as referenced in the above cited cases, there is no reason to find that all of the grounds for relief from judgment set forth in MCR 2.1612(C)(1) cannot be used in criminal cases. Where one basis is found to be applicable, it logically follows that another basis found in the same court rule is equally applicable. Based upon the above, we find that MCR 6.001(D)(2) is inapplicable in the present matter.

Again, in *People v. Darden,* 230 Mich.App. 597, 605-606, 585 N.W.2d 27 (1998) , the Court of Appeals stated that "a motion for a new trial on the basis of newly discovered evidence must first be brought in the trial court in accordance with the Michigan Court Rules. See MCR 2.611, 2.612."

In *Lindsey*, the Defendant obtained an expungment from his criminal conviction that he was not entitled to under the Court Rules. The Defendant had a prior (second) disqualifying conviction which meant that he was not entitled to expungment. Defendant innocently but erroneously did not disclose the same. The County Prosecutor did not have a problem with the expungment and did not challenge it. Sometime later, the Attorney General's Office and the State Police learned of the expungment and sought leave to intervene and set the order aside.

The trial court found that it did not have jurisdiction. The Court of Appeals disagreed and reversed holding:[1]

> Notwithstanding the impermissibility of defendant's expungment, plaintiff may only be relieved from the trial court's order for one of the reasons set forth in MCR 2.612(C)(1). Plaintiff argues that defendant misrepresented his prior criminal record, constituting fraud or misconduct by a party under MCR 2.612(C)(1)(c). We disagree, and we instead agree with the trial court's finding that defendant did not deliberately misrepresent his eligibility for record expunction. We also disagree with plaintiff's argument that the order was void due to lack of jurisdiction under MCR 2.612(C)(1)(d). We again disagree, because the trial court had subject matter and personal jurisdiction, so its judgment was merely voidable, not void. See *Abbott v. Howard,* 182 Mich.App.

---

[1] *People v Lindsey*, No. 283481, 2009 WL 3929930 (Mich Ct App November 19, 2009).

243, 247-248, 451 N.W.2d 597 (1990); *LeClaire, supra* at 660.

Finally, plaintiff argues relief from judgment is justified based on mistake pursuant to MCR 2.612(C)(1)(a). We agree. Prior to the order of expungement, both plaintiff and defendant believed that defendant actually was eligible for the expungement. Both parties proceeded under a misapprehension of a critical fact, and neither party's mistake was due to their own lack of diligence. See *Farm Bureau Mutual Ins. Co. v. Buckallew,* 471 Mich. 940, 690 N.W.2d 93 (2004). Rather, the mistake was due to a third party. The incomplete information initially provided to the parties by the Michigan State Police constitutes the extraordinary circumstances necessary for relief to be granted based on mistake. See *Lark v. Detroit Edison Co.,* 99 Mich.App. 280, 283-284, 297 N.W.2d 653 (1980). Accordingly, relief is warranted.

The Attorney General cannot claim that a criminal defendant should reasonably belief that the 6.500 proceedings are the only remedies which can be utilized once the Michigan Supreme Court has denied leave to appeal.  It is clear that other rules are available and that some Michigan jurists do not ascribe to their view of the law.[2]

---

[2] For an example of a successive petition which was decided on the merits, see *People v. Swain*, No. 314564, 2015 WL 521623, at *1 (Mich. Ct. App. Feb. 5, 2015).  Pursuant to counsel's discussion with Ms. Swain, a Supreme Court appeal of this ruling is currently pending.

MCR 6.508(G) provides that the "Defendant may file" one and only one motion under the subchapter. Here, the Defendant has filed only one. The problem that the Defendant is facing is that a court has chosen to retroactively recharacterize a motion filed under a different subchapter as a 6.500. Mr. Williams was seriously harmed by this *sua sponte* reformulation of his motion. The United States Supreme Court dealt with a highly related issue in *Castro v United States*.[3] There, the United States Supreme Court held that United States District Courts had very narrow authority to recharacterize a litigant's motions into a federal motion for post-conviction relief under 28 U.S.C. Sec. 2255 (a "2255 motion"). The Michigan Solicitor General's Office has gone on record stating that the U.S. Supreme Court's view is applicable to Michigan and provided assurances to the United States Court of Appeals for the Sixth Circuit that they would not invoke the preclusion rule set forth above where the Defendant never invoked MCR 6.500 *et seq.*

In *Castro*, the Supreme Court upheld a procedure from nine circuits which stated that the Courts should not use this recharacterization procedure to convert a motion into a 2255 motion (the federal counterpart of

---

[3] *Castro v United States*, 540 US 375 (2003).

a motion under 6.500) because of the limitations on successive petitions. "The limitation applies when a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion. In such circumstances the district court must notify the *pro se* litigant that it intends to re-characterize the pleading, warn the litigant that this re-characterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has. If the court fails to do so, the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's 'second or successive' restrictions. § 2255, ¶ 8."[4] Justice Scalia (in his concurring) opinion stated that the power to recharacterize pleadings was exceptional and should be used sparingly.  The Court found that ordinarily a litigant's preference should be given controlling weight.

Had Mr. Williams intended for this matter to be heard as a 6.500 motion, he would have addressed cause and prejudice and filed a pleading that at least attempted to track the requirements of MCR 6.500. "Our adversary system is designed around the premise that the parties know what

---

[4] *Castro v United States*, 540 US 375, 383 (2003).

is best for them, and are responsible for advancing the facts and arguments entitling them to relief."[5] "Recharacterization is unlike 'liberal construction,' in that it requires a court deliberately to override the *pro se* litigant's choice of procedural vehicle for his claim. It is thus a paternalistic judicial exception to the principle of party self-determination, born of the belief that the 'parties know better' assumption does not hold true for *pro se* prisoner litigants."[6]   A post-hac attempt to convert the Defendant's properly filed petition into an improper one is most disturbing and is a direct impairment of the Defendant's right to access to the Courts.

The Michigan Supreme Court accepts the doctrine that pro se pleadings should be liberally construed where a prisoner is exercising his/her right to access to the Courts.[7] Justice Scalia stated that recharacterization is particularly troubling where a Court recharacterizes a motion into a motion which places the Defendant in a worse position than he would have been if the recharacterization never took place:[8]

> "The  Court  today  relieves  Castro  of  the consequences  of  the  recharacterization  (to  wit,

---

[5] *Castro v United States*, 540 US 375, 386 (2003) (Scalia, J.).
[6] *Id.*.
[7] *People v. Moore*, 493 Mich. 933, 825 N.W.2d 580 (2013) (citing *Hanes v Kerner*,  404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[8] *Id.* at 388.

causing his current § 2255 motion to be dismissed as 'second or successive') because he was not given the warning that its opinion prescribes. I reach the same result for a different reason. Even if one does not agree with me that, because of the risk involved, pleadings should *never* be recharacterized into first § 2255 motions, surely one must agree that running the risk is unjustified *when there is nothing whatever to be gained by the recharacterization.* That is the situation here. Castro's Rule 33 motion was valid as a procedural matter, and the claim it raised was no weaker on the merits when presented under Rule 33 than when presented under § 2255. The recharacterization was therefore unquestionably improper, and Castro should be relieved of its consequences."

This Court's recharacterization placed Mr. Williams in precisely this position. The Court used Mr. Williams' "one and only one" petition for post-conviction relief without his consent.

A textual reading of the rule supports the Defendant's viewpoint. It provides:

> Except as provided in subrule (G)(2), regardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, *one and only one motion for relief from judgment may be filed with regard to a conviction.* The court shall return without filing any successive motions for relief from judgment. A defendant may not appeal the denial or rejection of a successive motion.

MCR 6.502. The Petitioner's first motion was never filed under that rule. The plain text makes it clear that the trigger should only take place when the Defendant files such a motion. Here, no such motion has ever been filed but the recharacterization process will make it difficult (if not impossible) to get through the clerk's screening process in our state's highest volume criminal court.

While the *Castro* rule is not constitutionally mandated,[9] state officials have given assurance to our Sixth Circuit that they will treat it as applicable. The Michigan Attorney General's Office has gone on record assuring the Sixth Circuit that in the appropriate case Michigan would adopt this rule.[10] In *Ruelas v. Wolfenbarger*, the Sixth Circuit summarized the Attorney General's position as follows:[11]

> "But no Michigan court has ever cited *Castro,* and, being grounded in the Court's supervisory power over lower federal courts, it is not directly binding on them. *Id.* at 382-84, 124 S.Ct. 786. Michigan's Attorney General argues, nevertheless, that Michigan's courts will surely see *Castro's* wisdom,

---

[9] *See Buelas v. Wolfenbarger*, 580 F.3d 403, 407 (6th Cir.2009) (noting that Castro was decided as a matter of the Supreme Court's supervisory power over the lower federal courts, and is not binding on the state courts). See also *Planes v Berghui*s, No. 2:07-CV-14000, 2010 WL 3937311 (ED Mich June 30, 2010), report and recommendation adopted 07-CV-14000, 2010 WL 3926262 (October 5, 2010) (trial court's recharacterization of motion for DNA testing into a 6.500 motion is not a constitutional violation).
[10] *Ruelas v Wolfenbarger*, 580 F3d 403 (6th Cir 2009).
[11] *Id.* at 404.

> and thus this Court should dismiss Ruelas′s claim
> and give them the opportunity to see if they want
> to adopt the rule for themselves. The AG further
> assures us that, if we took this action, he would
> argue for, not against, adoption of the *Castro* rule,
> even though that would be against the state′s
> interests           at           that           point″

Today, the Assistant Attorney General handling this case is repudiating that concession in the interest of expediency. It cannot engage in that form of a bait and switch. Mr. Williams' motion for miscellaneous relief from judgment appeal was part of his direct appeal. It was not even part of his collateral appeal. This Court should hold that the State is barred from asserting otherwise.

The Attorney General's argument is without merit. Counting the time that both petitions were filed, the Petitioner is clearly within the one year time limit.

D.   *Opportunity for Supplemental Briefing on Equitable Tolling.*

As the Attorney General Correctly notes, equitable tolling is matter that it is incredibly fact specific. Depending on how this Court characterizes these issues, the issue may have a completely different complexion. The Defendant requests the opportunity to brief equitable tolling should this Court reject the issues set forth above.

25

**VI-XII     Habeas Claims VI-XII are all subject to de novo review because there is no merit ruling.**

As noted earlier in this brief, the Michigan Attorney General has agreed that the *Castro* rule will be respected in Michigan.   They have formally assured the Sixth Circuit that they will honor it.  This case involved the exact error that *Castro* did.   The state court recharacterized the Petitioner's motion under MCR 2.119 as a MCR 6.500.  Despite the fact that Mr. Williams never filed such a motion (a prerequisite under the rule), they treated it as one and denied it.

The Warden therefore may not argue the procedural default.  Since there is no merit ruling, the matter is subject to de novo review. *Maples v. Stegall,* 340 F.3d 433, 437 (6th Cir. 2003) and *Wiggins v. Smith,* 539 U.S. 510 (2003)).   While the Attorney General takes great pains to argue that the prisoner had notice and that people are presumed to know the law, they glaze over the fact that this same presumption means that state prisoners have the right to accept former Solicitor General and current Assistant Solicitor Eric Restuccia's assurance that Michigan and her agents will not pursue the very argument that they are trying to push.

Applying de novo review, this Court should grant the writ on these issues.

## REQUEST FOR THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Should this Court deny the Petitioner's motion, then he would request that this Court grant him a Certificate of Appealability. While the standard of review is well known, it still bears repeating. The fact that this Court may think the state court's ruling is objectively reasonable does not mean that a Certificate should be denied. If a reasonable jurist could find for the Petitioner, then a Certificate should be granted.

Contrary to the Attorney General's position, Mr. Williams absolutely can ask for a Certificate of Appealability at this time. Congress has told this Court to decide the issue at the time it decides the habeas corpus petition. Mr. Williams no longer has the luxury of waiting for the Court's opinion to make this request. Since this Court does not share advance copies with litigants, Mr. Williams cannot be reasonably expected to identify with precession the errors this Court might making in deciding this case. He does not own a crystal ball. All that can be offered is generalities.

In *Barefoot v Estelle*, 463 U.S. 880, 893 (1983), the Court set forth the standard governing issuance of a certificate as probable cause. A habeas corpus petitioner appealing from the denial of a § 2254 petition had to make

"a substantial showing of the denial of a federal right" to obtain a certificate of probable cause.

The Barefoot standard was codified in Section 102 of the Antiterrorist and Effective Death Penalty Act of 1996. The key provision states that:

 (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

 (B) the final order in a proceeding under section 2255.

 (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right

 (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).

The standard for issuance of a certificate of appealability and for a certificate of probable cause are the same. *See Miller-El v. Cockrell,* 537 U.S. 322 (2003) ("by enacting AEDPA, using the specific standards the Court had elaborated earlier for the threshold test, Congress confirmed [the Barefoot standard]); *Slack v. McDaniel,* 529 U.S. 473, 483 (2000). *See also Lyons v Ohio*

*Adult Parole Authority,* 105 F3d 1063 (6th Cir. 1997) ("it seems clear, however, that, at least so far as this case is concerned, the AEDPA merely codifies the Barefoot standard. The new law states that certificates may issue "only if the applicant has made a substantial showing of the denial of a constitutional right.").

In *Miller-El,* Justice Kennedy (writing for the Court) again stressed that the Certificate of Appealability process is a gateway process which was never intended to be a "ruling on the merits of petitioner's claim." Id. At 331. Under the prevailing standard, a petition must "show that reasonable jurists could debate whether (or for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* At 336 (quoting *Slack,* 529 U.S. at 484).

The *Miller-El* Court went on to note that "the threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. at 336. In fact the Court affirmatively noticed that §2253 forbids it. "When a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifies its denial of a Certificate of

Appealability based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.[22] Id. at 336-37.

The *Miller-El* Court went on to note:

> [O]ur opinion in Slack held that a Certificate of Appealability does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a Certificate of Appealability merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with §22 53 that a Certificate of Appealability will issue in some instances where there is no certainty of ultimate relief. After all, when a Certificate of Appealability is sought, the whole that the prisoner [?]has already failed in that endeavor.[?]

Id. at 337 (quoting Barefoot, at 893 n.4).

The *Miller-El* Court overruled the Fifth Circuit's refusal to grant the Certificate of Appealability. "We do not require petitioner to prove, before the issuance of a Certificate of Appealability, that some jurists would grant the petition for habeas corpus." *Id*. at 338. In fact the Court stated that in some cases, the law required the issuance of a Certificate of Appealability even though "every jurist of reason might agree" after plenary consideration that the petitioner will not prevail.

30

Mr. Williams would remind this Court that the question before this Court is whether there is a reasonably debatable issue for the Court to consider. Moreover, this Court has said that it will review the issue without deference to the District Court's ruling. *Miller v. Collins,* 305 F.3d 491, 493-94 (6th Cir. 2002).

The *Barefoot* Court stated that "[o]bviously, the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner." In such a case, the Certificate should not be denied. '7'7 L.Ed.2d at 1104.

This principle is discussed by one leading commentator of federal habeas corpus as follows:

> To qualify under Barefoot, an appeal must raise at least one issue as to which the petitioner makes a "substantial showing of the denial of [a] federal right." In defining the substantial showing standard, the Supreme Court admonished district courts that they may not deny applications for probable cause certificates solely because they have already denied the petitions on the merits: "Obviously the petitioner need not show that he should prevail on the merits. He already failed in that endeavor. Rather, a certificate must issue if the appeal presents a question of some substance," i.e. at least one issue (1) that is "debatable among jurists of reason;" (2) that a court could resolve in a different

31

manner; (3) that is "adequate to deserve encouragement to proceed further; or (4) that is not squarely foreclosed by statute, rule, or authoritative court decision, or... [that is not] lacking any factual basis in the record.

2 Liebman, *Federal Habeas Corpus Practice and Procedure* (5th Ed) §35.4b, p.10′76-′7′7. Mr. Williams meets this standard. As the *Bairefoot* Court noted: "A court of appeals should be confident that petitioner′s claim is squarely foreclosed by statute, rule, or authoritative court decision, or is lacking any factual basis in the record of the case, before dismissing it as frivolous." 77 L.Ed.2d. at 1105.

The standards for the issuance of a Certificate of Appealability are met.

## RELIEF

WHEREFORE, Petitioner prays this Court grant the writ.

Respectfully submitted,

/s/Stuart G. Friedman
STUART G. FRIEDMAN (P46039)
Attorney for Petitioner
3000 Town Center, Suite 1800
Southfield, MI 48075
(248) 228-3322
Fax:  (248) 359-8695

DATED:  February 16, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on that I served my opposing counsel through the

Court's ECF filing system.

Respectfully submitted,

/s/Stuart G. Friedman
STUART G. FRIEDMAN (P46039)
Attorney for Petitioner
3000 Town Center, Suite 1800
Southfield, MI 48075
(248) 228-3322
Fax:  (248) 359-8695

DATED:  February 16, 2015