UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THADDEUS WILLIAMS,

               Petitioner,

v.

CINDI S. CURTIN,

               Respondent.

_____/

Case Number 13-14636
Honorable David M. Lawson

## OPINION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

This matter is before the Court on the petitioner's motion under Federal Rule of Civil Procedure 60(b)(1) and (6) for relief from the November 29, 2016 judgment dismissing his petition as untimely. The petitioner contends that the judgment should be set aside for two reasons. First, he claims that the Court mistakenly concluded that a July 8, 2009 motion filed by the petitioner in the state trial court was a post-conviction collateral attack on the judgment, when, according to the petitioner, it was "part of the direct appeal" since it was filed when the petitioner's motion for reconsideration before the state supreme court still was pending. According to the petitioner, because the July 8, 2009 motion actually was "part of the direct appeal," his direct appeal did not conclude until December 20, 2010, when the Michigan Supreme Court denied a motion for reconsideration of its decision denying leave to appeal further from the state trial court's denial of the July 2009 motion. Further, he argues that, because his direct appeal concluded on December 20, 2010, the limitations period did not begin to run until 90 days later — on March 20, 2011, when the time for filing a petition for a writ of *certiorari* in the United States Supreme Court ran out. Second, the petitioner argues that he is entitled to equitable tolling of the statute of limitations due to the negligence of his post-conviction counsel in failing to correctly calculate the one-year limitations period, thus leading to the untimely filing.

I.

In its opinion dismissing the petition as untimely, the Court summarized the procedural

history of the petitioner's case in the state courts as follows:

> Following his convictions and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising claims concerning the reference to his weapons conviction and denial of a mistrial motion, the sufficiency of the evidence, the submission of first-degree and second-degree murder charges to the jury, the conduct of the prosecutor and the trial court, and the jury instructions. The court denied relief on those claims and affirmed his convictions. The petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order on May 27, 2009. *People v. Williams*, 483 Mich. 1019, 765 N.W.2d 317 (2009). That court denied reconsideration on August 6, 2009. *People v. Williams*, 484 Mich. 874, 769 N.W.2d 232 (2009).
>
> On October 5, 2009, the petitioner filed a motion to vacate his convictions in the state trial court raising a claim concerning his notice and trial on the first-degree murder charge. The trial court denied relief in a summary order. *People v. Williams*, No. 07-007377-01 (Wayne Co. Cir. Ct. Nov. 24, 2009). The petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." In denying the application, the court noted that the petitioner's convictions were no longer reviewable under the direct appeal rules, Mich. Ct. R. 7.200 or 7.300, and were only reviewable under the post-conviction rules, Mich. Ct. R. 6.500, *et seq. People v. Williams*, No. 295546 (Mich. Ct. App. May 24, 2010). The court also denied reconsideration. *People v. Williams*, No. 295546 (Mich. Ct. App. July 1, 2010). The petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied in a standard order on September 9, 2010, *People v. Williams*, 488 Mich. 858, 787 N.W.2d 124 (2010), and reconsideration was denied on December 20, 2010. *People v. Williams*, 488 Mich. 998, 791 N.W.2d 445 (2010).
>
> On March 8, 2011, the petitioner filed a motion for relief from judgment in the state trial court raising claims concerning his notice for the first-degree murder charge, his right to a public trial during jury voir dire, the jury instructions, the failure to preserve evidence, and the ineffectiveness of trial and appellate counsel. The court denied relief on those claims citing Michigan Court Rule 6.508(D)(3). *People v. Williams*, No. 07-007377 (Wayne Co. Cir. Ct. June 2, 2011). The petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Williams*, No. 306161 (Mich. Ct. App. March 23, 2012). The petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied on June 25, 2012 because the motion for relief from judgment was "prohibited by MCR 6.502(G)." *People v. Williams*, 491 Mich.

947, 815 N.W.2d 450 (2012). The court also denied reconsideration on November
20, 2012. *People v. Williams*, 493 Mich. 898, 822 N.W.2d 577 (2012).

Opinion & Order, ECF No. 13, Pg ID 2173-74. The petitioner subsequently filed a motion for

reconsideration in which he asserted that the Court's dismissal of the petition was premised on a

mistake of fact, because the first motion to vacate sentence was filed in the state court in July 2009,

not October 2009. In an order denying the petitioner's motion for reconsideration, the Court

addressed that argument as follows:

> It is undisputed that the petitioner filed his habeas petition in this Court on
> November 7, 2013. The Court concluded, based on the procedural history recited
> above, that the petitioner's conviction became final on November 4, 2009, when
> the 90-day period for filing a petition for a writ of certiorari in the Supreme Court
> expired:
>
>> The state courts completed direct review of the petitioner's convictions on
>> August 6, 2009, when the Michigan Supreme Court denied reconsideration
>> of its order denying leave to appeal. The petitioner's convictions became
>> "final" under the federal habeas statute 90 days later — on November 4,
>> 2009 — when "the time for filing a certiorari petition expire[d]." *Jimenez
>> v. Quarterman*, 555 U.S. 113, 120 (2009); *see Lawrence v. Florida*, 549
>> U.S. 327, 333 (2007); S. Ct. R. 13(1). Therefore, the petitioner was required
>> to file his federal habeas petition under 28 U.S.C. § 2244(d)(1)(A) by
>> November 4, 2010.
>
> [Opinion and Order] at 4-5 (Pg ID 2175-76). Based on that analysis, the Court
> concluded that the habeas clock did not start to run until November 4, 2009, and
> that the petitioner initially was required to file his habeas petition by November 4,
> 2010.
>
> In his briefing in this case, the petitioner argued that his petition was timely because
> the running of the one-year limitations period twice was paused due to the pendency
> of his two post conviction motions for relief from judgment. Those motions were
> filed, according to the petitioner, sometime in July 2009 and on March 8, 2011.
> However, as the Court explained in its opinion, even if it is assumed that the
> limitations period was tolled by both motions, for the entire time that the
> proceedings on each were pending, his petition still was untimely:
>
>> After the state courts completed review of the first post-conviction motion,
>> the federal habeas clock restarted on December 21, 2010. By the
>> petitioner's way of thinking, it then ran for 78 days until he filed his second
>> motion for relief from judgment on March 8, 2011. Following that
>> reasoning, it restarted again after November 20, 2012, when the Michigan

Supreme Court denied reconsideration of the appeal of the second post-conviction motion. The 287 days then left on the clock took the habeas filing deadline to September 2, 2013. The petitioner did not file his initial federal habeas petition until November 7, 2013 – more than two months later.

*Id.* at 6 (Pg ID 2177). Although the Court referred to the clock as "restarting," the Court's discussion of that calculation makes clear that the Court did not assume that any time at all had run on the habeas clock in 2009. Instead, the Court assumed that the clock never started to run before November 4, 2009, and that it was paused from then through the conclusion of the petitioner's direct appeal from the denial of his first post-conviction motion, on December 21, 2010.

Thus, whether the post-conviction motion was filed in July or October 2009 is of no consequence, because the Court assumed for the purposes of its tolling analysis — affording the petitioner the benefit of the most generous possible construction of the procedural timeline — that no time at all ran on the AEDPA clock before December 21, 2010. The Court then calculated that 78 of the 365 days of the limitations period ran between December 21, 2010 and March 8, 2011, and that 287 days remained when the Michigan Supreme Court denied the petitioner's motion for reconsideration on the appeal of his section post-conviction motion, on November 20, 2012.

Therefore, even if the Court assumes — as it did for the purposes of its previous ruling — that the limitations period was subject to tolling for the full extent of every creditable period claimed by the petitioner, he still was required to file his petition no later than September 2, 2013. His petition was not filed by that date, and it therefore was untimely.

Order Denying Mot. for Reconsideration, ECF No. 23, PageID.2238-39.

In his present motion, the petitioner raises another objection to the Court's assessment of the timeline, based on his contention that the July 2009 motion to vacate his sentence actually was "part of the direct appeal," which, according to him, means that when the proceedings on the appeal from the denial of that motion concluded, he was entitled to the 90-day grace period attributable to the time for filing a petition for a writ of *certiorari* in the United States Supreme Court. The Court rejected a similar, but not identical, argument in its order denying reconsideration:

The petitioner asserts that he had 90 days within which to file a petition for a writ of certiorari after the December 21, 2010 ruling denying reconsideration of the appeal from his first post-conviction motion, which he believes would "cover" the 78 days between then and when he filed his second motion. But that 90-day "grace

period" is an allowance that is added only after the last ruling by a state's highest court at the conclusion of a direct appeal, to determine the day on which a petitioner's judgment of conviction becomes "final" and the habeas clock first starts to run. *Taylor v. Palmer*, 623 F. App'x 783, 790 (6th Cir. 2015) ("Taylor's judgment became final for purposes of AEDPA on June 19, 2012, the day on which the ninety-day time period for seeking certiorari with the United States Supreme Court expired, and therefore the AEDPA statutory period began to run on June 20, 2012." (emphasis added)) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)). No such 90-day allowance is added when calculating any period of tolling due to the pendency of a subsequent collateral attack on the judgment, because that allowance is afforded only when fixing the benchmark date of finality for the judgment of conviction. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) ("[An] application for state postconviction review is . . . not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

Order, ECF No. 23, PageID.2239.

## II.

### A. Statutory Tolling

For his first argument, the petitioner contends that the Court miscalculated the extent of statutory tolling that should apply under 28 U.S.C. § 2244(d)(2) by mischaracterizing his motion to vacate sentence filed in July 2009 as a post-conviction collateral proceeding against the judgment rather than "part of the direct appeal." According to the petitioner, the correct assessment of the procedural history would have his "direct appeal" conclude on December 20, 2010, not, as the Court previously concluded, on November 4, 2009.

Federal Rule of Civil Procedure 60(b) "provides six discrete paths for undoing a final judgment." *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017). The petitioner invokes two of them here.

"'Rule 60(b)(1) . . . is intended to provide relief . . . when the judge has made a substantive mistake of law or fact in the final judgment or order.'" *Penney v. United States*, 870 F.3d 459, 461 (6th Cir. 2017) (quoting *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002)). "The 'catchall' provision in Rule 60(b)(6) vests courts with a deep reservoir of equitable power to vacate

judgments 'to achieve substantial justice' in the most 'unusual and extreme situations.'" *Zagorski v. Mays*, 907 F.3d 901, 904 (2018) (quoting *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). However, the Sixth Circuit has held "that Rule 60(b)(6) should be used only in 'exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Penney*, 870 F.3d at 461 (quoting *Moreland v. Robinson*, 813 F.3d 315, 327 (6th Cir. 2016)). Accordingly, where the movant's "arguments are of a type for which Rule 60(b)(1) is intended to provide relief, [the Court should] consider his motion only under that section." *Id.* at 461-62.

In his first claim for relief, the petitioner presents a straightforward argument that the Court erred as a matter of fact or law in determining the date when his "direct appeal" concluded. That sort of error falls squarely within the ambit of Rule 60(b)(1), and the Court will construe the claim accordingly. Relief under Rule 60(b)(1) on the basis of mistake is warranted where the Court has reached a clearly erroneous conclusion of fact or law. *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 364 (6th Cir. 2001).

The petitioner contends that the July 2009 motion to vacate sentence, which was filed by him in and adjudicated initially by the state trial court, was in fact "part of the direct appeal" rather than a post-conviction collateral attack on the judgment. However, the undisputed record of the proceedings shows otherwise.

In its order directing the state to respond, the Court ordered the state to produce a copy of the order denying the motion, which had not previously been filed with the Rule 5 materials. Contemporaneously with its response to the Rule 60 motion, the State filed a Rule 5 supplement that included the order. The summary order includes no elaborated reasoning or grounds and reads in its entirety as follows: "THE COURT, after reviewing Defendant's Motion to Vacate

Conviction and Sentence and all attached documents, denies Defendant's motion. Defendant's

Motion to Vacate Conviction and Sentence is DENIED." Order dated Nov. 24, 2009, ECF No.

44-1, PageID.2493. The petitioner applied for leave to appeal from the denial of his motion, and

the order of the Michigan Court of Appeals was only slightly more expansive:

> The delayed application for leave to appeal is DENIED for failure to meet the
> burden of establishing entitlement to relief under MCR 6.508(D). Where
> defendant's convictions are no longer subject to appellate review under subchapters
> 7.200 or 7.300, those convictions can only be reviewed in accordance with the
> provisions of subchapter 6.500. MCR 6.501.

Order Denying Leave to Appeal, *People v. Williams*, No. 295546 (Mich. Ct. App. May 24, 2010)

(ECF No. 9-7, PageID.1260). Finally, the Michigan Supreme Court denied leave to appeal from

the lower appellate court's ruling in a summary order that reads in its entirety: "On order of the

Court, the motion for immediate consideration is GRANTED. The application for leave to appeal

the May 24, 2010 order of the Court of Appeals is considered, and it is DENIED, because the

defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

The motion to vacate conviction and sentence is DENIED." *People v. Williams*, 488 Mich. 858,

787 N.W.2d 124 (2010).

As an initial matter, the record cited above shows that every state court to address the

motion to vacate sentence treated it as a post-conviction collateral attack on the judgment under

Michigan Court Rule 6.501, *et seq.* "Subchapter 6.500 of the Michigan Court Rules establishes

the procedures for pursuing *postappeal relief from criminal convictions*. The subchapter is the

*exclusive means to challenge a conviction* in Michigan once a defendant has *exhausted the normal*

*appellate process.*" *People v. Reed*, 198 Mich. App. 639, 642, 499 N.W.2d 441, 443 (1993)

(emphasis added), *aff'd*, 449 Mich. 375, 535 N.W.2d 496 (1995); *see also Peterson v. Klee*, 655

F. App'x 327, 331 (6th Cir. 2016) ("[U]nlike someone pursuing a direct appeal as of right, a

defendant seeking appellate review of the denial of a motion for relief from judgment under MCR

6.500 must apply for leave to appeal, does not receive the benefit of oral argument at the leave stage, and does not have the right to appointed counsel."); *Taylor v. Smith*, No. 14-175, 2016 WL 6275345, at *1 (W.D. Mich. Oct. 27, 2016) ("A 6.500 motion is [not] a direct appeal."). The petitioner has not cited any authority for the novel proposition that a motion initiated under subchapter 6.500 of the Michigan Court Rules is deemed under any provision of state law to be "part of the direct appeal" of a criminal conviction.

The Sixth Circuit has held that in the limited circumstance, "when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding." *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009). But that principle does not apply where, as here, the petitioner's post-conviction motion to vacate sentence was filed well after the commencement of his direct appeal, the appellate proceedings were not consolidated, and the state courts never regarded the post-conviction motion as any part of the appellate proceedings. The petitioner was sentenced on July 23, 2007. He initiated his direct appeal by filing of a claim of appeal on August 1, 2007. Claim of Appeal dated Aug. 1, 2007, ECF No. 9-5, PageID.191. His counseled brief on appeal, supplemented by a *pro se* "Standard 4" brief, was filed on February 26, 2008. Appellant's Br., ECF No. 9-5, PageID.852. The Michigan Court of Appeals denied the appeal in an unpublished decision issued on November 20, 2008. *People v. Williams*, No. 279713, 2008 WL 4958547 (Mich. Ct. App. Nov. 20, 2008). The Michigan Supreme Court denied the petitioner's application for leave to appeal the lower appellate ruling on May 27, 2009, *People v. Williams*, 483 Mich. 1019, 765 N.W.2d 317 (2009), and it finally denied a motion for reconsideration of that decision on August 6, 2009, *People v. Williams*, 484 Mich. 874, 769 N.W.2d 232 (2009). In this case it is

clear from the undisputed record that the direct appeal proceedings substantively were concluded long before the post-conviction motion even was presented to the state courts. The only portion of the direct appeal that occurred after the filing of the post-conviction motion was the summary denial of the petitioner's motion for reconsideration in the Michigan Supreme Court, and there is no indication in any of the state court decisions that the reconsideration ruling included any consolidated consideration of any claims raised in the post-conviction motion. Moreover, the facts that a separate appeal was taken from the denial of the motion to vacate sentence, and that the merits of that ruling were affirmed in entirely separate appeal proceedings that finally wound up in December 2010, further confirm that the proceedings on the post-conviction motion were not in any way consolidated with or wound up as part of the direct appeal.

There was no error in the Court's determination that the July 2009 motion to vacate sentence was a post-conviction collateral attack on the judgment and not any part of the direct appeal, which concluded on August 6, 2009.

## B. Equitable Tolling

In his second argument, the petitioner contends that the limitations period should be equitably tolled due to the negligence of his retained post-conviction counsel that resulted in the tardy filing of the petition. The petitioner asserts that his attorney was unresponsive to attempts at communication, and he points to a letter of admonishment from the State Bar of Michigan directing the attorney to return the entire fee collected due to his handling of the matter. The petitioner asserts that he had completed a 22-page *pro se* petition that was ready to be filed in federal court by December 17, 2012, but he delayed filing it because his family persuaded him to consult and retain an attorney to pursue the habeas case. The petitioner entered into a fee agreement and paid his attorney $8,000 to file a petition, but over the ensuing months his inquiries about the progress

of the case were met with silence or curt replies that the attorney was "still working on it." As noted above, the petition eventually was filed by counsel on November 7, 2013, and on November 18, 2013, the petitioner filed his own draft as an amended petition.

The petitioner argues that the Court erred by "failing to review" the argument for equitable tolling based on attorney incompetence that was raised, after judgment was entered, in his motion for a certificate of appealability. That is another straightforward claim of legal or factual error amenable to review under Rule 60(b)(1) and will be construed as such. Having reviewed the claim, the Court finds that the petitioner has not established that there was any clear error in the Court's refusal to apply equitable tolling to excuse his late filing.

The one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court has explained that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

In its opinion denying the petition, the Court rejected the petitioner's argument for equitable tolling on separate grounds. As the Court noted, the fact that he is untrained in the law, was proceeding without a lawyer for a period of time, or may have been unaware of the statute of

limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (holding that *pro se* status is not an extraordinary circumstance); *Allen*, 366 F.3d at 403 (holding that ignorance of the law does not justify tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding that illiteracy is not a basis for equitable tolling). Moreover, the petitioner's actual or mistaken notions about the tolling effect of his state court collateral review motions do not aid his case, because the Court gave him the benefit of the doubt in its calculations of the filing deadline and afforded the petitioner all of the statutory tolling periods that he claimed. The Sixth Circuit adopted the same generous view of the procedural history in its order denying a certificate of appealability from the judgment of dismissal. Order Denying Cert. of Appealability, ECF No. 37 (6th Cir. Feb. 7, 2018).

The petitioner now asserts that his untimely filing should be excused due to the neglect of the matter by his retained attorney, which led to the late filing and which the petitioner contends caused him to delay filing his own *pro se* petition for eleven months, despite the fact that his draft was ready to file well within the limitations period. However, "[i]n order for the limitations period to be tolled equitably based on attorney error, which is the claim here, the error must be 'far more serious' than 'a garden variety claim of excusable neglect.'" *Giles v. Beckstrom*, 826 F.3d 321, 325 (6th Cir. 2016) (quoting *Holland*, 560 U.S. at 651-52). "Generally, an attorney's misunderstanding of a filing deadline is not grounds for equitable tolling." *Ibid.*; *see also Holland*, 560 U.S. at 651-652 ("[A] simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."); *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) ("Generally, a lawyer's mistake is not a valid basis for equitable

tolling.") (internal quotation marks and citation omitted). Thus, the error made by the petitioner's attorney in calculating the filing deadline for the habeas petition is not sufficient grounds for equitable tolling.

Moreover, even if counsel's unresponsiveness to the matter was egregious, the petitioner has not established that it *caused* the untimely filing, because he asserts that he expected his lawyer merely to "enhance" the claims already recited in his *pro se* petition, which the petitioner represents was completed and ready to file by December 2012. The fact that the petitioner wrote his attorney repeatedly prompting him with what he believed was the proper filing date, that he was able to submit timely *pro se* filings in the state courts within the limitations period, and that he had prepared his own petition well in advance of the filing deadline, all establish that it was the petitioner's choice to delay filing his petition, rather than counsel's negligent handling of the matter, that was the cause of the untimely filing. *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 852 (6th Cir.), *cert. denied*, 138 S. Ct. 101 (2017) ("Watkins has not established that any alleged incompetency *caused* his untimely filing. In fact, after the limitations period began to run, Watkins filed at least two timely motions in state court, one through counsel and one *pro se*, raising the instant ineffective assistance of counsel claim. Additionally, he timely filed, *pro se*, the original habeas petition. That he was able to make these timely filings indicates that his mental illness was not the cause of his untimely amended habeas petition."). The petitioner has not explained why, when he became concerned about the filing deadline, he could not have filed his own petition before the limitations period expired, and then harried his counsel afterwards to present an amended petition for consideration by the Court. And this case is unlike those where late filings by counsel were excused because a petitioner was forced, over repeated objections, to endure an appointment of incompetent or unresponsive counsel, or where affirmative representations by

counsel or the Court misled the petitioner about the true filing deadline. *C.f.*, *Jones v. Stephens*, 998 F. Supp. 2d 529, 535-36 (N.D. Tex. 2014) ("[T]he petitioner lodged multiple, timely requests to avoid counsel's appointment based, at least in part, on concerns about counsel's previous failure to meet a state deadline, and the Court nevertheless forced the continuation of a mutually undesired attorney-client relationship in an order that, while not misleading or preventing Jones from doing anything, probably caused Jones to relax his vigilance regarding the federal deadline."). The petitioner has not shown that his lawyer's conduct comprised extraordinary circumstances that would justify equitable tolling under *Holland*.

III.

The petitioner has not established that the Court's ruling denying his petition as untimely was based on any clear error of fact or law, and he has not advanced sufficient grounds to warrant equitable tolling of the one-year limitations period under 28 U.S.C. § 2244. The petition was untimely and properly was dismissed.

Accordingly, it is **ORDERED** that the petitioner's motion for relief from judgment (ECF No. 40) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   September 3, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 3, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI